957 F.2d 305
 60 USLW 2552, 36 Soc.Sec.Rep.Ser. 384,
Medicare & Medicaid Guide P 40,022
 ILLINOIS COUNCIL ON LONG TERM CARE, Gilman Nursing Center,
an Illinois limited partnership, Spring Valley
Nursing Center, an Illinois limited
partnership, et al.,
Plaintiffs-Appellants,
v.
Phillip BRADLEY, in his official capacity as Director of the
Illinois Department of Public Aid, Dawn C. Netsch, in her
official capacity as Comptroller of the State of Illinois
and Patrick J. Quinn, in his official capacity as Treasurer
of the State of Illinois, Defendants-Appellees.
 No. 91-1701.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 14, 1991.
Decided Feb. 18, 1992.
 
 Richard F. Zehnle (argued), Neal A. Crowley, Ann C. McKenzie, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for plaintiffs-appellants.
 James C. O'Connell, Asst. Atty. Gen. (argued), Owen M. Field, Welfare Litigation Div., Chicago, Ill., for defendants-appellees.
 Before POSNER, MANION and KANNE, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 The Illinois Council on Long Term Health Care, an organization representing the interests of nursing homes in Illinois, and two of its member nursing homes sued various Illinois state officials for allegedly violating the Medicaid Act, 79 Stat. 343, as amended, 42 U.S.C. § 1396 et seq., by delaying payments to nursing homes for services provided to poor residents. The plaintiffs moved in the district court for a preliminary injunction that would have ordered the defendants to reimburse the nursing homes more quickly. The district court denied the injunction. 759 F.Supp. 1309. Because we find that the plaintiffs have no chance of success on the merits, we affirm and remand to the district court with instructions to dismiss the case.
 
 I.
 
 2
 Congress enacted the Medicaid program to allow the federal government to provide financial assistance to states so that the states may provide medical assistance to poor people. State participation in the Medicaid program is voluntary. If a state does choose to participate and qualify for financial assistance it must, among other things, submit a "plan for medical assistance," describing the state Medicaid program's nature and scope, for the Secretary of Health and Human Services' approval. Among other things, the plan must establish a scheme to reimburse health care providers for the cost of medical services they provide to poor people. See generally Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 110 S.Ct. 2510, 2513-14, 110 L.Ed.2d 455 (1990) (citing relevant statutory and regulatory provisions).
 
 
 3
 Illinois participates in the Medicaid program under a plan approved by the Secretary of HHS. In 1979, Illinois submitted, and the Secretary approved, a plan amendment stating that Illinois would meet "all requirements of 42 C.F.R. § 447.45 for timely payment of claims." Section 447.45(d) sets explicit time limits for paying claims to providers:
 
 
 4
 (d) Timely processing of claims. (1) The Medicaid agency must require providers to submit all claims no later than 12 months from the date of service.
 
 
 5
 (2) The agency must pay 90 percent of all clean claims from practitioners ... within 30 days of the date of receipt.
 
 
 6
 (3) The agency must pay 99 percent of all clean claims from practitioners ... within 90 days of the date of receipt.
 
 
 7
 (4) The agency must pay all other claims [including those of nursing home operators] within 12 months of the date of receipt.
 
 
 8
 42 C.F.R. § 447.45(d) (emphasis added). Subsections (d)(2) and (3) implement 42 U.S.C. § 1396a(a)(37)(A). That provision, enacted in 1977, sets forth in the statute the 30-day/90-day payment requirement for practitioners.
 
 
 9
 Billing for nursing home services under the Illinois Medicaid plan is accomplished by means of documents known as "Turnaround Invoices." Generally, after the last day of each month of services Illinois calculates the amount due a nursing home based on a per diem rate established for the fiscal year. Illinois then sends the nursing home a Turnaround Invoice reflecting this amount. The nursing home then makes what it considers to be appropriate adjustments on the Turnaround Invoice and returns it to the state. Illinois considers the nursing home's bill for services to be received when the nursing home returns the Turnaround Invoice.
 
 
 10
 Historically, Illinois has paid claims for nursing home services within 30 to 45 days after the last date of services, with a few slightly longer delays toward the end of several fiscal years. But because of budgetary problems in fiscal year 1991 (July 1, 1990 to June 30, 1991), the state consistently began to delay payments. For example, the state did not make payments for November 1990 services until between 94 and 104 days after the last day of services.
 
 
 11
 Nursing home operators say they were able to live with payments 30 to 45 days from the last day of services. However, they insist that the recent delays in payments from Illinois have caused them to fall behind in paying their own bills. Faced with a situation that they allege jeopardizes their very existence (an allegation the defendants dispute), the plaintiffs in this case (two nursing homes and an umbrella organization representing nursing homes) sought an injunction from the district court that would require Illinois' officials to pay claims for nursing home services within 45 days of the last date of services included in the claim. The district court denied the plaintiffs' request for a preliminary injunction, holding that the plaintiffs' likelihood of success on the merits was negligible. The plaintiffs filed a timely interlocutory appeal under 28 U.S.C. § 1292(b) from the district court's decision.
 
 II.
 
 12
 To be entitled to a preliminary injunction, a plaintiff must demonstrate some likelihood of success on the merits. If a plaintiff seeking a preliminary injunction cannot show that his chance of prevailing on the merits is "better than negligible," a court must deny the injunction regardless of how heavily any other equities may weigh in the plaintiff's favor. Centurion Reinsurance Co., Ltd. v. Singer, 810 F.2d 140, 145 (7th Cir.1987); see also Curtis v. Thompson, 840 F.2d 1291, 1296 (7th Cir.1988). The district court properly decided to deny the plaintiffs' request for a preliminary injunction because the plaintiffs have failed to demonstrate a chance of success on the merits.
 
 
 13
 The plaintiffs argue that the recent delay in payments by Illinois violates both the Medicaid Act and the Secretary's regulations. The plaintiffs first argue that the delayed payments violate the Boren Amendment to the Medicaid Act, Pub.L. 96-499, § 962(a), 94 Stat. 2650, codified as amended at 42 U.S.C. § 1396a(a)(13)(A). The Boren Amendment provides that
 
 
 14
 a State plan for medical assistance must
 
 
 15
 provide ... for payment ... of [health care services] provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide health care services in conformity with applicable State and Federal laws....
 
 
 16
 (Emphasis added.) The Boren Amendment does not on its face impose any time limits on states for paying claims but the plaintiffs insist that it requires states to make timely payments. Stripped of embellishments, their argument proceeds like this: The Boren Amendment requires that payments be adequate to enable providers to meet the costs required to render sufficient health care services. Untimely payments can be inadequate payments since providers need the money in time to meet their own expenses, such as payroll, mortgages, and utilities. If the financial pressure caused by the late payments becomes severe (as sources of credit dry up and creditors insist on payment), care to residents may suffer to the point that it becomes inadequate (or, in the worst case, less accessible as providers go out of business). The plaintiffs insist that since late payment can be inadequate payment, resulting in inadequate care, untimely payment of claims can violate the Boren Amendment and a court must order state officials to speed up their payments to cure the violation.
 
 
 17
 As a practical matter, it does make sense to consider the timeliness of payments as an element of their adequacy. A dollar one or two months from today is not the same as a dollar today. Money has a time value, and businesses need money to pay their bills when due, not one or two months later. But the question is not what reimbursement scheme might make sense but whether the Boren Amendment requires timely payment--in other words, whether the Boren Amendment imposes time limits on the states for paying Medicaid claims. Based on the amendment's language and the context of the statutory and regulatory scheme in which it appears, we conclude it does not.
 
 
 18
 Although timeliness of payments could logically be an element of their adequacy, the Boren Amendment's language and context demonstrates that is not the approach Congress took. As we have noted, the Boren Amendment does not on its face impose any time limits or refer directly to timeliness in any way. Moreover, the Boren Amendment's language requires rates, not actual payments, to be reasonable and adequate. The words "reasonable and adequate" modify the noun "rates," not "payment." See 42 U.S.C. § 1396a(a)(13)(A) (state plan must provide "for payment ... through the use of rates ... which the state finds ... are reasonable and adequate ..."). It may be true that the reason for requiring adequate rates is to assure adequate payment for services. But "rate" means an amount, not the time at which that amount must be paid. The logical conclusion from this is that the Boren Amendment focuses on the amount of a state's payments, not the time in which the state makes those payments.
 
 
 19
 The statutory and regulatory context in which the Boren Amendment appears reinforces this conclusion. "[A] statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." King v. St. Vincent's Hospital, --- U.S. ----, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991). At the time Congress passed the Boren Amendment, both the Medicaid Act and its implementing regulations expressly addressed the time in which states must pay claims. The Act, in 42 U.S.C. § 1396a(a)(37)(A), enacted in 1977 (see Pub.L. 95-142, § 2(b)(1)(C), 91 Stat. 1176 (1977)), requires that a state plan provide claim payment procedures to ensure that "90 per centum of claims [from health care practitioners] ... are paid within 30 days of the date of receipt ... and that 99 per centum of such claims are paid within 90 days of the date of receipt...." The regulation, 42 C.F.R. § 447.45(d), promulgated in 1979, pursuant to the express authority granted by 42 U.S.C. § 1302 to promulgate regulations to administer the Medicaid Act (see 44 Fed.Reg. 30344 (May 25, 1979)), adopts the 30-day/90-day rule for practitioners' claims and requires that states "pay all other claims within 12 months of the date of receipt...." 42 C.F.R. § 447.45(d)(2), (3), and (4).
 
 
 20
 Section 1396a(a)(37)(A) shows that when Congress wanted to impose time limits for the payment of certain Medicaid claims, it did so explicitly. Moreover, given the express time limits previously imposed by § 1396a(a)(37)(A) and 42 C.F.R. § 447.45(d), it is all the more unlikely that Congress intended to impose further time limits through the Boren Amendment, which does not mention time at all and speaks only about payment rates. We conclude from the Boren Amendment's language and context that the Boren Amendment does not address the timeliness of claim payment. Cf. King, 112 S.Ct. at 573-74. A state complies with federal law so long as it pays providers' claims within the express time limits established by the statute and regulations (in this case, the 12-month limit for "all other claims" set forth in 42 C.F.R. § 447.45(d)(4)).
 
 
 21
 The plaintiffs insist that if the only time limit placed on Illinois is § 447.45(d)(4)'s 12-month limit, the state can avoid paying its Medicaid bills forever. This is so, say the plaintiffs, because the 12-month period begins when the state receives the provider's claim. However, the provider cannot submit its claim until it receives a Turnaround Invoice, a document the state generates; as we have noted, Illinois deems receipt of the Turnaround Invoice to be receipt of the claim. The plaintiffs assert that Illinois may avoid paying claims simply by not sending the Turnaround Invoice. Illinois will never receive a claim, so the 12-month time limit for payment will never begin. According to the plaintiffs, Congress could not have intended this result.
 
 
 22
 There are at least three responses to this cynical argument. First, there is no evidence that Illinois has ever delayed or will ever delay sending Turnaround Invoices to avoid paying claims. Indeed, there is no evidence that Illinois is not paying claims; it is just taking longer to pay them than it has in the past. Second, the plaintiffs' argument ignores 42 C.F.R. § 447.45(d)(1), which requires the state "to require providers to submit all claims no later than 12 months from the date of service." If Illinois did delay sending Turnaround Invoices so that the nursing homes could not submit their bills within 12 months from the date of service, it would violate § 447.45(d)(1). Third, the plaintiffs' scenario does not change the Boren Amendment's language and context, both of which indicate that the Boren Amendment does not address timeliness. If the plaintiffs want absolute assurance in the Medicaid Act that the scenario they posit never comes to pass, they should look to Congress to amend the Medicaid Act to prevent it.
 
 
 23
 Besides arguing that Illinois has violated the Boren Amendment by delaying payments, the plaintiffs also argue that Illinois has violated 42 C.F.R. §§ 447.253(a) and (b). Section 447.253(a) provides that whenever a state seeks to change the "payment methods and standards" in its plan, it must make the findings and assurances set forth in §§ 447.255(b) through (g). Section 447.253(b) requires that whenever a state makes a change in its "methods and standards," it must make certain findings. The plaintiffs argue that by making payments later than it historically had made them, Illinois changed its "methods and standards"; since Illinois did not make the necessary findings and assurances before slowing down its payments, it violated §§ 447.253(a) and (b).
 
 
 24
 Sections 447.253(a) and (b) do not apply to Illinois' decision to delay payments to nursing homes. Section 447.253, read as a whole and in the context of accompanying regulations, addresses methods and standards for rate setting and not the time in which payments must be made. Section 447.253 appears in a part of Subpart C of Chapter IV of 42 C.F.R. entitled "Payment Rates." Section 447.252(b) states that a plan must "specify comprehensively the methods and standards used by the agency to set payment rates." The findings mandated by § 447.253(b) (the section relevant to nursing homes), and the assurances mandated by §§ 447.253(c), (f), and (g), all relate to methods and standards for determining payment rates. None of the findings or assurances that §§ 447.253(b) through (g) require mentions anything about assuring that states will make timely payments. Since a specific regulation, 42 C.F.R. § 447.45(d), imposes express time limits for payments to Medicaid providers, it is unlikely that the Secretary would implicitly address timeliness in a separate regulation that does not mention timeliness.
 
 
 25
 Moreover, Subpart C of Chapter IV of 42 C.F.R., the subpart containing § 447.252 and § 447.253, implements the Boren Amendment. See 42 C.F.R. § 447.250(a). As we have seen, the Boren Amendment does not address the timeliness of payments. It follows that the regulations implementing the Boren Amendment would not address timeliness either. The language of the regulations, which expressly addresses rate-setting but not timeliness, is consistent with this conclusion. Since a delay in making payments is not the kind of "change in payment methods and procedures" that 42 C.F.R. §§ 447.252 and 447.253 address, Illinois did not have to make the findings and assurances those sections require when it increased the time in which it paid the plaintiffs for their services.
 
 
 26
 The district court correctly determined that the plaintiffs were not entitled to a preliminary injunction because they could not show a better than negligible chance of succeeding on the merits of their claims. In fact, the plaintiffs have not demonstrated any chance of success on the merits. The plaintiffs' claims depend on alleged violations of the Boren Amendment and its regulations. But Illinois has not violated either the Boren Amendment or its implementing regulations because neither the Boren Amendment nor the regulations address Illinois' conduct--delaying payments to Medicaid providers. The only limit on the time in which Illinois must pay the plaintiffs' Medicaid claims is the 12-month rule set out in 42 C.F.R. § 447.45(d)(4). The plaintiffs may wish to be paid more quickly, and perhaps the law should require more timely payments. But that decision is for Congress, not the federal courts, to make.
 
 
 27
 The plaintiffs have not ever suggested that Illinois has violated § 447.45(d)(4) or that any real possibility exists that it will do so in the future. Since plaintiffs cannot win on the merits, there is no point in remanding the case for further proceedings. Therefore, we affirm the district court's judgment and remand with instructions to dismiss the case on the merits. See Pratte v. N.L.R.B., 683 F.2d 1038, 1044 (7th Cir.1982); Hurwitz v. Directors Guild of America, 364 F.2d 67, 70 (2d Cir.1966).
 
 
 28
 AFFIRMED AND REMANDED WITH INSTRUCTIONS TO DISMISS.