966 F.2d 743
 37 Soc.Sec.Rep.Ser. 499, Medicare & Medicaid Guide
P 40,336,
3 NDLR P 18
 UNITED CEREBRAL PALSY ASSOCIATIONS OF NEW YORK STATE, INC.,
Plaintiff-Appellant,
and
The St. Luke's-Roosevelt Hospital Center,
Intervenor-Plaintiff-Appellant,
v.
Mario CUOMO, as Governor of the State of New York, Elin
Howe, as Commissioner of the New York State Office of Mental
Retardation and Developmental Disabilities, Lorna
McBarnette, as Acting Commissioner of the New York State
Department of Health, Gregory M. Kaladjian, as Acting
Commissioner of the New York State Department of Social
Services, Patrick Bulgaro, as Director of the New York State
Division of the Budget, Defendants-Appellees.
 No. 1344, Dockets 92-7195, 92-7235.
 United States Court of Appeals,
Second Circuit.
 Argued March 31, 1992.
Decided June 11, 1992.
 
 1
 Steven H. Mosenson, New York City (Glenn M. Rickles, Gen. Counsel, United Cerebral Palsy Assoc. of N.Y.S., Inc., New York City, of counsel), for plaintiff-appellant.
 
 
 2
 Edward S. Kornreich, New York City (Stephen P. Kramer, Stephen A. Wieder, Proskauer Rose Goetz & Mendelsohn, New York City, of counsel), for intervenor-plaintiff-appellant.
 
 
 3
 Judith I. Ratner, Asst. Atty. Gen. of the State of New York, Albany, N.Y. (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendants-appellees.
 
 
 4
 Richard A. Levy, New York City (Mitra Behroozi, Fanette Pollack, Eisner, Levy, Pollack & Ratner, New York City, of counsel), for amicus curiae, Local 1199, Drug, Hosp. & Health Care Employees Union.
 
 
 5
 Before MINER and McLAUGHLIN, Circuit Judges, and OWEN, Senior District Judge.*
 
 OWEN, Senior District Judge:
 
 6
 Plaintiff United Cerebral Palsy Associations of New York ("UCPA") and Intervenor-plaintiff The St. Luke's-Roosevelt Hospital Center appeal from an interlocutory order of the United States District Court for the Northern District of New York, (Con. G. Cholakis, Judge) 783 F.Supp. 43 (N.D.N.Y.1992) denying their motion for a preliminary injunction. They seek to preliminarily enjoin New York State from implementing a two week delay in reimbursement of Medicaid payments from fourteen to twenty eight days on the ground that the delay violates the Medicaid Act, 42 U.S.C. § 1396 et seq., specifically the Boren Amendment to the Medicaid Act, § 1396a(a)(13)(A), and the regulations promulgated thereunder, specifically, 42 C.F.R. § 447.253(a) and (b), and the due process, equal protection, and takings clauses of the United States Constitution. Concluding that on this record appellants have failed to demonstrate either a likelihood of success on the merits or the existence of sufficiently serious questions going to the merits, we affirm the order of the court below.
 
 
 7
 UCPA is a not-for-profit corporation which provides health care services to mentally retarded and developmentally disabled people. UCPA operates approximately 70 community residences for individuals who cannot live independently, each of which is covered by a Medicaid provider agreement signed by UCPA and New York State. Over 97% of UCPA's revenue is derived from Medicaid payments for these intermediate care facilities. St. Luke's-Roosevelt is a non-governmental, not-for-profit hospital which receives weekly Medicaid reimbursement checks of approximately $3.4 million.
 
 
 8
 New York State participates in the Medicaid program, a joint federal and state cost-sharing system that pays health care providers for medical services provided to those who cannot afford to pay for such services themselves. In the past, New York has reimbursed providers such as appellants within 14 days of receipt of claims. In August 1991, New York State as part of an overall effort to improve its own troubled fiscal situation, announced that it would begin to send out Medicaid reimbursement checks within 28 days of receipt of claims.[1] This delay was implemented gradually over a five month period, concluding in March 1992, the last week of the fiscal year. The rate at which health care providers are reimbursed was not changed and providers are still paid for all services rendered. Only the date on which reimbursement payments are sent was altered. Appellants contend that this two week delay in reimbursement violates the Medicaid Act, the regulations promulgated thereunder, and the Federal Constitution.
 
 
 9
 The Medicaid program, established in Title XIX of the Social Security Act, is a joint federal and state system. State participation in the program is optional, but a state that elects to participate must comply with federal statutory requirements. A state participating in the program is required to submit to the Secretary of Health and Human Services a "plan for medical assistance," 42 U.S.C. § 1396, that establishes a scheme for reimbursing health care providers for the medical services provided to indigent patients. The Boren Amendment requires that a State plan for medical assistance must,
 
 
 10
 (13) provide--
 
 
 11
 (A) for payment ... of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities....
 
 
 12
 42 U.S.C. § 1396a(a)(13)(A).
 
 
 13
 Thus, the Boren Amendment requires that the rates of payment established by the State be adequate; there is no requirement as to the date of payment. On its face, the statute does not impose time limits or refer to timeliness in any way. See Illinois Council on Long Term Care, et al. v. Bradley, et al., 957 F.2d 305, 308 (7th Cir.1992). The regulations implementing the Boren Amendment, 42 C.F.R. § 447.250 et seq., refer only to adequate rate setting and say nothing about the date on which payment must be made. Where the regulations do speak of time requirements, 42 C.F.R. § 447.45(d)(4), that provision requires that the Medicaid agency pay all claims within 12 months of the date of receipt. New York's 28 day repayment scheme is obviously within this.
 
 
 14
 Appellants argue, however, that any delay in payment constitutes a rate change because a dollar paid today is worth more than a dollar paid two weeks from today. While appellants' claim may have some merit with regard to the time value of money, the Boren Amendment and its implementing regulations allow for such a diminution, so long as payments are made within 12 months, and accordingly such a lag does not constitute a rate change. See Illinois Council, 957 F.2d at 308. An example provided by appellees is instructive: "when a purchase is made on credit, an individual generally has 30 days to make payment. The price of the goods or services, the payment rate, does not change regardless of whether one pays the bill at the beginning of the 30 days or at the end of the 30 days. The date of payment may vary within the 30 day period, but the payment rate remains the same." Appellees' Brief at 9. Similarly, here, the regulations permit the State to reimburse claims within 12 months of receipt; so long as the State meets this deadline, the amount--the rate--paid remains constant. Under appellants' theory, any delay would constitute a change in rate forcing the Medicaid agency to go back to the drawing board to seek approval whenever payments were delayed, even if for one day. Neither the statute nor the regulations require such action.
 
 
 15
 Second, appellants argue that New York's change in the date of payment constitutes a change in "payment methods and standards" and therefore the State must make findings and assurances that its rates are reasonable and adequate to meet the costs of the facilities, pursuant to 42 C.F.R. § 447.253.[2] The section under which this provision falls is entitled "PAYMENT RATES" and addresses methods and standards for rate setting. See Illinois Council, 957 F.2d at 309; 42 C.F.R. § 447.252(b) ("The plan must specify comprehensively the methods and standards used by the agency to set payment rates ...") (emphasis added); § 447.253(f) ("The Medicaid agency must provide that it has complied with the public notice requirements ... when it is proposing significant changes to its methods or standards for setting payment rates ...") (emphasis added); § 447.253(g) ("The Medicaid agency must pay ... using rates determined in accordance with methods and standards specified in an approved State plan") (emphasis added). Because, as discussed above, we find that a change in the date of payment does not equal a change in the rate of payment, New York has not altered its methods and standards for setting rates, and thus the State had no obligation to make assurances or findings under this section.
 
 
 16
 Neither does the delay constitute a "material change[ ] in State law, ... or in the State's operation of the Medicaid program" 42 C.F.R. § 430.12(c) and thus, New York had no obligation to amend its State plan. The State plan, with its established rate of reimbursement, is unchanged and, having previously received approval for the plan from the Secretary, New York is in compliance with the statute and regulations.
 
 
 17
 Appellants rely heavily on Association of Surrogates and Supreme Court Reporters v. New York, 940 F.2d 766 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 936, 117 L.Ed.2d 107 (U.S.1992), in which the Court, on contract grounds, struck down an extensive lag in portions of salary payments to New York State employees which had been theretofore established by a collective bargaining agreement. Unlike the State employees in Supreme Court Reporters, the Medicaid health care providers, here, have no contractual right of reimbursement and thus, the lag in payment does not impair the State's contract obligations in violation of Article I, § 10, clause 1 of the U.S. Constitution.
 
 
 18
 Finally, inasmuch as the payments are at the established rate and well within the 12 month statutory requirement, and apply to all Medicaid providers, governmental and nongovernmental alike, the delay violates no constitutional rights of appellants. It does not constitute a taking without just compensation; neither does it violate due process of law or the Equal Protection Clause.
 
 
 19
 We agree with the District Court's determination that appellants failed to show a likelihood of success on the merits. We also conclude that appellants failed to demonstrate sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward appellants. Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir.1991). Accordingly, the order of the District Court denying the preliminary injunction is affirmed.
 
 
 
 *
 The Honorable Richard Owen, Senior District Court Judge of the Southern District of New York, sitting by designation
 
 
 [1]
 The State has exempted from the delay all "financially distressed" hospitals as defined by New York State Public Health Law, N.Y.Pub. Health L. § 2807-c(14-c)
 
 
 [2]
 42 C.F.R. § 447.253 provides:
 (a) State assurances. In order to receive HCFA approval of a State plan change in payment methods and standards, the Medicaid agency must make assurances satisfactory to HCFA that the requirements set forth in paragraphs (b) through (g) of this section are being met,
 (b) Findings. Whenever the Medicaid agency makes a change in its methods and standards, ... the agency must make the following findings:
 (1) Payment rates. (i) The Medicaid agency pays for ... services through the use of rates that are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers ...