5 F.3d 1239
 42 Soc.Sec.Rep.Ser. 306, Medicare&Medicaid Gu 41,698
OREGON ASSOCIATION OF HOMES FOR THE AGING, INC.;
Presbyterian Nursing Home Inc., dba Presbyterian Care
Center; Mercy Care Center Benedictine Nursing Center;
Lutheran Homes & Hospital Inc., dba Fairlawn Towne & Health
Center; Plaintiffs-Appellees,
v.
STATE OF OREGON, By and Through its DEPARTMENT OF HUMAN
RESOURCES; Senior and Disabled Services Division;
Richard C. Ladd, Director of Senior and
Disabled Services Division;
Defendants-Appellants.
 Nos. 91-36075, 91-36371.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1993.
Decided Sept. 21, 1993.
 
 Thomas M. Christ, Mitchell, Lang & Smith, Portland, OR, Jody Ann Noon, Noon, Kraemer & Coombs, Tigard, OR, for plaintiffs-appellees.
 Jas. Adams, Asst. Atty. Gen., Oregon Dept. of Justice, Salem, OR, for defendants-appellants.
 Appeal from the United States District Court for the District of Oregon, Robert E. Jones, District Judge, Presiding.
 Before: TANG, POOLE and RYMER, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 The state of Oregon appeals the district court's partial summary judgment in favor of Medicaid Nursing Homes in the nursing homes' 42 U.S.C. Sec. 1983 action challenging the state's reclassification of nursing services into rate categories receiving lower reimbursement under the state's Medicaid plan (No. 91-36075). The state also asks that this court vacate the district court's award of attorney's fees to the nursing homes in the event that the panel reverses the district court's summary judgment (No. 91-36371).
 
 
 2
 Because the district court determined expressly that there was no cause for delay and directed entry of its partial summary judgment pursuant to Fed.R.Civ.P. 54(b), we have jurisdiction over the state's timely appeal pursuant to 28 U.S.C. Sec. 1291. Baker v. Limber, 647 F.2d 912, 916 (9th Cir.1981). We review de novo, Kruso v. International Tel. & Tel. Corp, 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990), and we affirm.
 
 
 3
 * Under the state's Medicaid plan, nursing homes are reimbursed for services according to the level of care provided. The plan and administrative regulations define five levels of care: Level 1 (Intermediate, Light Cost), Level 2 (Intermediate), Level 3 (Intermediate, Heavy Cost), Level 4 (Skilled), and Level 5 (Skilled, Heavy Cost). See Or.Admin.R. 411-70-022, -025, -026, -027, -030. The Senior and Disabled Services Division (SDSD), a division of the Oregon Department of Human Resources, administers the state Medicaid program. See Or.Rev.Stat. Sec. 410.070.
 
 
 4
 In 1988, Congress passed the Medicare Catastrophic Coverage Act of 1988, which allowed Oregon to shift some patients from Medicaid to Medicare, thereby reducing the state's Medicaid expenses. See Medicare Catastrophic Coverage Act of 1988, Pub.L. 100-360, 102 Stat. 683, repealed, Medicare Catastrophic Coverage Repeal Act of 1989, Pub.L. 101-234, 103 Stat. 1979. After the health care industry encouraged SDSD to pass along the state's savings by increasing Medicaid payments, SDSD amended former Or.Admin.R. 411-70-025 (subsequently renumbered 411-70-027) effective June 1, 1989 to specify that certain services (routine injection therapy, routine maintenance of stable tracheostomies, and routine maintenance of stable gastrostomies or jejunostomies) would be classified as Category 4 (Skilled) services.
 
 
 5
 The amendment mirrored Medicare regulations, which classified these services as skilled nursing services. See 28 C.F.R. Sec. 409.33(b). As a result of this amendment, nursing homes received more money for rendering these services, which were previously reimbursed under Category 2 (Intermediate), because the payment rates for Category 4 services are higher than payment rates for Category 2 services. See Or.Admin.R. 411-70-022, -025, -026, -027, -030. The state did not submit the amendment to HCFA for approval.
 
 
 6
 In January 1990, Congress repealed the Catastrophic Coverage Act. See Medicare Catastrophic Coverage Repeal Act of 1989, Pub.L. 101-234, 103 Stat. 1979. In October 1990, SDSD promulgated a temporary rule that reclassified the above services from Category 4 to Category 2. See Or.Admin.R. 411-70-027 (previously numbered 411-70-025). SDSD did not amend its plan or submit the rule to HCFA for approval. SDSD subsequently promulgated a final version of the rule, which it submitted to HCFA for approval on June 24, 1991.
 
 
 7
 In this action, the nursing homes challenged the temporary and final rules reclassifying the services from Category 4 to Category 2. The district court granted partial summary judgment in favor of the nursing homes on the ground that the state violated 42 U.S.C. Sec. 1396a(a)(13) and HCFA regulations by failing to amend the state Medicaid plan and obtain HCFA approval of the temporary rule's reclassification scheme. The district court deferred ruling on the final rule until the HCFA approval process was completed, but directed entry of judgment on the temporary rule pursuant to Fed.R.Civ.P. 54(b). This appeal followed.[1]
 
 
 8
 On August 18, 1992, HCFA approved the state's final rule reclassifying the services from Category 4 to Category 2. HCFA denied the state's request that the effective date of the amendment be retroactive to April 1, 1991 on the ground that the state did not publish notice of the rule in accordance with HCFA regulations until August 13, 1991. Accordingly, HCFA approved an effective date of August 14, 1991. The state has filed an administrative appeal from HCFA's determination.
 
 II
 
 9
 The state contends that the district court erred by holding that it was required to submit a plan amendment with its reclassification of services to HCFA for approval. We disagree.
 
 
 10
 Medicaid is a cooperative federal-state program through which the federal government provides financial assistance to states so that they may furnish medical care to needy individuals. 42 U.S.C. Sec. 1396; Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). Participation by states is voluntary, but if states elect to participate, they must comply with requirements imposed by the Medicaid Act and federal regulations. Wilder, 496 U.S. at 502, 110 S.Ct. at 2513. In part, a participating state must submit a Medicaid plan, or a "comprehensive written statement ... describing the ... program," for approval to HCFA. 42 U.S.C. Sec. 1396a(a); 42 C.F.R. Sec. 430.10; Wilder, 496 U.S. at 502, 110 S.Ct. at 2513. The state plan must be amended to reflect changes in federal law or policy or material changes in state law, organization, policy, or operation of the state Medicaid program, and the amendments also must be submitted for HCFA approval. Id. Sec. 430.12(c).
 
 
 11
 The state Medicaid plan must specify the methods and standards used to set payment rates. Id. Sec. 447.252(b). Amendments changing payment methods and standards require HCFA approval. Id. Sec. 447.253(a). In order to receive HCFA approval of a change in payment methods or standards, the state Medicaid agency must make "assurances satisfactory to HCFA" that federal requirements are met, including assurances that the agency made findings that the payment rates are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated" facilities. 42 U.S.C. Sec. 1396a(a)(13)(A) (requirement for plans generally); 42 C.F.R. Secs. 447.250(a) (same), 447.253(a-b) (requirement for plan amendments); Folden v. Washington State Dep't of Social & Health Servs., 981 F.2d 1054, 1056-57 (9th Cir.1992). A law that effects a change in payment methods or standards without HCFA approval is invalid. Washington State Health Facilities Ass'n v. Washington Dep't of Social & Health Servs., 698 F.2d 964, 965 (9th Cir.1982) (per curiam).
 
 
 12
 The state first contends that it was not required to submit a plan amendment for HCFA approval because it only reclassified the services and did not change its methods and standards for setting the payment rates for Categories 2 and 4. This reclassification, the state argues, is similar to a delay in payment because both changes affect reimbursement rates indirectly, rather than directly. Courts routinely hold that delays in payment are not changes in the methods and standards for setting payment rates. See United Cerebral Palsy Ass'ns v. Cuomo, 966 F.2d 743, 745-46 (2d Cir.) (regulations refer only to adequate rate-setting and say nothing about date of payment other than to provide that agency must pay all claims within 12 months), cert. denied, --- U.S. ----, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992); Illinois Council on Long Term Care v. Bradley, 957 F.2d 305, 309-10 (7th Cir.) (same), cert. denied, --- U.S. ----, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992). The state concludes that only direct changes in reimbursement rates require HCFA approval.
 
 
 13
 The state's argument is not persuasive. The reclassification at issue here reduces reimbursement, which results in different payment rates, rather than merely delaying payments.
 
 
 14
 The state also argues that reclassification of services is similar to redetermining eligibility requirements because both changes involve classification of patients, rather than reimbursement, and both changes result in facilities receiving less money. In support of its argument, the state cites Smith v. Concannon, 951 F.2d 178 (9th Cir.1991), and Martinez v. Ibarra, 759 F.Supp. 664, 669, motion to amend denied, 762 F.Supp. 873 (D.Colo.1991). This argument is not persuasive because reclassification of services, unlike redetermination of eligibility requirements, results in a reduction in price for a particular service. Moreover, Smith and Martinez do not even address whether states must submit plan amendments regarding payment methods to HCFA. See Smith, 951 F.2d at 179-82 (plaintiff challenged Oregon's application of Aid to Families with Dependent Children ("AFDC") eligibility standards to its Medicaid plan, as required by 42 C.F.R. Sec. 435.711); Martinez, 759 F.Supp. at 669 (analyzing in part whether a change in eligibility requirements for a home-care plan was a "material" change requiring amendment of the plan and HCFA approval under 42 C.F.R. Sec. 430.12(c)).
 
 
 15
 Finally, the state cites Massachusetts Fed'n of Nursing Homes, Inc. v. Massachusetts to support its position that the reclassification is not a change in the methods and standards used to set payment rates. See 772 F.Supp. 31 (D.Mass.1991). In Massachusetts Fed'n, the court upheld Massachusetts' changes to its ten reimbursement categories despite the state's failure to submit the change to HCFA for approval. Id. at 33, 38-40. The ten categories measured the level of patient care with "management minute" ranges, or ranges for the length of time spent with each patient. Id. at 33. The reimbursement rate for each management minute category was based on actual cost data. Id. at 33-34. The plan, which was approved by HCFA, set forth the regression formula used to calculate the reimbursement rate, but it did not set forth the minute ranges. Id. at 34. To calculate management minute ranges, the state developed a special Management Minute Questionnaire ("MMQ"), which was designed to elicit the amount of time spent with each patient. Id. at 33-34. At the plan's inception, however, there was no MMQ data, so the state converted prior data on patients' nursing requirements to approximate the MMQ and calculated management minute ranges. Id. When actual billings were received, 42% of the patients fell within the highest reimbursement category, which was an artificial inflation resulting from the conversion of prior data to the new MMQ format. Id. at 34. The state then recalculated the management minute ranges based on new data it collected via the MMQ. Id. at 35.
 
 
 16
 In upholding the recalculation despite the state's failure to submit the recalculation to HCFA for approval, the district court held that the actual management minute ranges were not a method or standard for setting payment rates. Id. at 38-40. Instead, the court held, "the 'method or standard' that must be included in the plan is the method of using management minutes, not the actual management minute ranges themselves." Id. at 40.
 
 
 17
 The state argues that Oregon's five-level reimbursement system is similar to Massachusetts' ten-category system in that they both reimburse nursing services based on the level of care provided. The Massachusetts system defines the level of care based on the amount of time spent with each patient, id. at 33, while the Oregon system defines the level of care based on the nature of the services required by the patient. The state argues that "matters of empirical application" such as the specific services encompassed within the care levels need not be included in the plan. See id. at 38-40 (making similar argument).
 
 
 18
 In support of its argument, the state points to the policies underlying the Medicaid Act, as amended by the Boren Amendment in 1980. When the Medicaid Act was first enacted, it required states to reimburse providers for the reasonable cost of services actually provided in accordance with standards adopted by the Secretary of Health and Human Services. Wilder, 496 U.S. at 505, 110 S.Ct. at 2515. The Boren Amendment changed the reimbursement requirements to payment that is "reasonable and adequate to meet the costs ... incurred by efficiently and economically operated facilities." 42 U.S.C. Sec. 1396a(a)(13)(A). This change gave states the responsibility for and more latitude in developing reimbursement rates. Wilder, 496 U.S. at 505-07, 110 S.Ct. at 2515-16. The Amendment also reduced federal oversight of states: states must submit assurances to HCFA that they have made findings that the reimbursement rates are reasonable and adequate, but they need not submit the actual findings. Id. at 507-08, 110 S.Ct. at 2516-17; Folden, 981 F.2d at 1057.
 
 
 19
 The state argues that by giving states greater authority and limiting the federal government's oversight role, Congress manifested its intent that states develop their plans free of excessive federal interference. See Colorado Health Care Ass'n v. Colorado Dep't of Social Servs., 842 F.2d 1158, 1166 (10th Cir.1988) (citing legislative history). Thus, the state concludes, the empirical aspects of the plan, such as the specific services for care levels or the amount of patient time for care levels, need not be included within the plan and do not require HCFA approval if changed. See Massachusetts Fed'n, 772 F.Supp. at 39-40 (making this argument for management minute ranges).
 
 
 20
 We disagree. Reclassifying specific nursing services and the calculation of management minute ranges are two very different things, even though they both involve reimbursement based on levels of care. The "empirical application" of new data to calculate minute ranges is so technical that arguably one would not expect it to be included in a plan. In contrast, reclassifying specific nursing services in order to reduce payment for them is a direct rate change and is not akin to plugging new data into an existing equation. See Missouri Dep't of Social Servs. v. Sullivan, 957 F.2d 542, 544 (8th Cir.1992) (distinguishing Massachusetts Fed'n on this basis). Moreover, by specifying that certain nursing services are covered in a certain category, the state is no longer defining rates by the level of care; it is setting specific prices for specific services. Thus, when the state Medicaid agency initially specified that certain services would be paid as skilled services under Category 4, it made a rate change. When the agency amended its regulations effective October 1, 1990 to specify that the services would be paid under Category 2, it made another rate change.[2]
 
 
 21
 The state also contends that even if the reclassification is a change in payment rate method, it is not a material change. The state argues that only material changes must be submitted for HCFA approval and that therefore it did not need to submit the reclassification. This argument is not persuasive. 42 C.F.R. Sec. 430.12(c) provides generally that plans must be amended, and the amendments submitted for HCFA approval, for material changes in state law or operation of the plan. 42 C.F.R. Sec. 447.253(b), however, provides for submission for HCFA approval of all amendments to methods and standards for payment rates and does not contain a materiality requirement. Moreover, section 447.253(b) used to require submission for HCFA approval of only "significant" rate changes, but HCFA amended the regulation in 1987 "to require State agencies to submit assurances and related information for all changes in the methods and standards for determining payment rates." 52 Fed.Reg. 28,141 (1987); 42 C.F.R. Sec. 253(b) (1986).
 
 
 22
 Accordingly, we affirm the district court's judgment that Oregon's temporary rule reclassifying nursing services is invalid because the state did not submit it to HCFA for approval.[3]
 
 III
 
 23
 The state does not appeal the amount of attorney's fees awarded to the nursing homes but asks only that the fee award be vacated in the event that the panel reverses on the merits. Because we affirm the district court's judgment in favor of the nursing homes, we do not disturb the fee award. Cf. Hopkins v. City of Sierra Vista, 931 F.2d 524, 529 (9th Cir.1991).[4]
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The state entered into a settlement with all nursing homes, except the ones in this action, whereby the parties agreed that the nursing homes would not challenge the temporary administrative rule that is the subject of this action
 
 
 [2]
 We grant the nursing homes' December 3, 1992 motion for judicial notice of documents showing HCFA's interim approval of the state's final rule regarding the reclassification. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir.1986) (court may take judicial notice of records and reports of administrative bodies). HCFA's interim approval supports our analysis. HCFA denied the state's application for retroactive application of the amendment because the state had failed to give public notice. Such notice is required only if the state makes "significant changes to its methods or standards for setting payment rates." 42 C.F.R. Sec. 447.253(f). HCFA's decision is not final because the state has filed an administrative appeal, and thus we do not accord it any deference, although we find it persuasive. See Folden, 981 F.2d at 1057-58; Missouri Dep't of Social Servs., 957 F.2d at 544 (using HCFA's determination that changing the inflation index was a change in payment method to distinguish Massachusetts Fed'n)
 
 
 [3]
 Because we affirm on the same ground as the district court, we do not reach the alternative bases advanced by the nursing homes for affirming the district court's judgment
 
 
 [4]
 The state's February 26, 1993 motion for remand to the district court is denied