60 F.3d 262
 48 Soc.Sec.Rep.Ser. 384, Medicare & Medicaid Guide
P 43,439
INDIANA ASSOCIATION OF HOMES FOR THE AGING INCORPORATED, et
al., Plaintiffs-Appellants,
v.
INDIANA OFFICE OF MEDICAID POLICY AND PLANNING, et al.,
Defendants-Appellees.
 No. 95-1422.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 20, 1995.
Decided June 29, 1995.
 
 1
 Brian W. Welch, Brian K. Peters, Paul R. Black, McHale, Cook & Welch, Indianapolis, IN, Malcolm J. Harkins (argued), Mark J. Biros, Donald L. Bell, II, Proskauer, Rose, Goetz & Mendelsohn, Washington, DC, for plaintiffs-appellants Indiana Ass'n of Homes for the Aging Inc., Indiana Health Care Ass'n, Hillhaven Corp. dba Hillhaven Wedgewood, Indianapolis Jewish Home Inc., dba Hooverwood, Heritage Medical Management Inc. dba Canterbury Village, Heritage Medical Management Inc. dba Carriage Manor, Midwest Care Centers, Inc., on behalf of themselves and all others similarly situated dba Bremen Health Care, Related to Cause IP94-1151-C.
 
 
 2
 Mark H. Lynch, S. William Livingston, Jr. (argued), Covington & Burling, Washington, DC, Jon B. Laramore, Office of Atty. Gen., Agency Litigation, Indianapolis, IN, for defendants-appellees, Indiana Office of Medicaid, Policy and Planning, Indiana Office of Secretary of Family and Social Services, James M. Verdier, in his official capacity as Asst. Secretary of Ind. Office of Medicaid Policy and Planning.
 
 
 3
 Jon B. Laramore, Office of Atty. Gen., Agency Litigation, Indianapolis, IN, for defendant-appellee John F. Richardson, in his official capacity as Secretary of Ind. Office of Secretary of Family and Social Services.
 
 
 4
 Before KANNE and ROVNER, Circuit Judges, and SHABAZ, District Judge.[1]
 
 
 5
 SHABAZ, District Judge.
 
 PROCEDURAL HISTORY
 
 6
 This is an appeal from the order of the United States District Court for the Southern District of Indiana, Indianapolis Division, John D. Tinder, presiding. Plaintiffs/Appellants Indiana Association of Homes for the Aging, Inc. et al. brought an action against Defendants/Appellees Indiana Office of Medicaid of Policy and Planning et al. ("Indiana") in the district court alleging violations of the Omnibus Budget Reconciliation Act of 1987 ("OBRA 87") concerning the administration of Indiana's Medicaid program for funding nursing homes. The district court granted summary judgment in favor of Indiana on claims VI and IX of Plaintiff's complaint.
 
 BACKGROUND
 
 7
 In OBRA 87, Congress made significant changes to Medicaid's nursing home provisions. Before enactment of OBRA 87 Medicaid financed nursing homes were certified as either Skilled Nursing Facilities ("SNFs") or as Intermediate Care Facilities ("ICFs"). 42 U.S.C. Sec. 1396r (prior to amendment). Facilities that provided care for patients who required the services of a registered nurse or a licensed practical nurse were certified as SNFs. Those facilities that provided services for patients who needed care beyond that of room and board, but did not require the care of registered nurses were certified as ICFs. OBRA 87 changed the two-tiered program for nursing homes in favor of a single standard for all nursing homes termed "nursing facilities". 42 U.S.C. Sec. 1396r. OBRA 87 required that all nursing homes increase their standards to provide care for all patients, those formerly requiring skilled nursing care and those requiring intermediate care. OBRA 87 established a single standard of care for all nursing home residents. Instead of residents receiving skilled or intermediate care as defined by statute and regulation, all residents receive care that allow them "to attain or maintain [their] highest practicable physical, mental, and psychosocial well-being." 42 U.S.C. Sec. 1396r. States were ordered to amend their plans to conform to these new requirements.
 
 
 8
 Indiana responded by amending its plan to provide for one certification for all nursing homes, termed "nursing facilities". See Indiana's Approved OBRA 87 State Plan Amendment, TN 90-8 at 60. Indiana pursuant to OBRA 87 provides care "to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident." Indiana, however, did not change its method to reimburse nursing facilities and continues to reimburse them based on whether a patient requires skilled nursing care or intermediate care. A nursing facility receives a slightly higher rate for a patient requiring more expensive skilled nursing care and a slightly lower rate for a patient requiring intermediate care. See 405 I.A.C. 1-14.1-2(n), -9. The payment rates do not affect the actual care received by the patients. Indiana Assoc. of Homes for the Aging Et al. v. Indiana Office of Medicaid Policy and Planning, Et al., IP 93-965-C (1994).
 
 
 9
 The Health Care Financing Administration ("HCFA"), the agency of HHS entrusted with administering the Medicaid system, approved Indiana's plan which provided the single certification for "nursing facilities", but retained the reimbursement methods based on the level of care classification. Appellants wrote to HCFA, about their concerns that Indiana had not complied with OBRA 87 requirements because it retained a reimbursement plan that utilized former level of care classifications. HCFA responded in writing that it had carefully reviewed the amended plan and found it to be in compliance with OBRA 87. HCFA stated that OBRA 87 changed only the certification of nursing homes and the level of care they must provide, but did not address the reimbursement systems developed by the states.
 
 
 10
 Appellants then commenced an action in the district court challenging the payment methods based on the level of care criteria. The district court agreed with HCFA's findings and granted Indiana's motion for summary judgment on those claims. Certain remaining claims are scheduled for trial in September, including the Boren amendment claims.
 
 STANDARD OF REVIEW
 
 11
 We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in favor of the nonmoving party. Illinois Health Care Ass'n. v. Bradley, 983 F.2d 1460, 1462 (7th Cir.1993); Williams v. Anderson, 959 F.2d 1411, 1413 (7th Cir.1992). We will uphold the entry of summary judgment "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
 
 
 12
 Indiana's amended plan was approved by HCFA and is accordingly a product of state and federal agency action. Bradley, 983 F.2d at 1462. "A trial court, therefore, must review the plan with the deference accorded federal agency actions." Id. at 1463; Pinnacle Nursing Home v. Axelrod, 928 F.2d 1306, 1313 (2d Cir.1991). "This deference entitles the reimbursement plan to a presumption of regularity, but does not prevent the court from a thorough, probing, in-depth review." Bradley, 983 F.2d at 1463, citing, Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). In conducting this review, the court "shall hold unlawful and set aside agency action, findings and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." Bradley, 983 F.2d at 1463, citing, 5 U.S.C. Sec. 706. HCFA's interpretation of its own regulation is of controlling weight unless plainly erroneous or inconsistent with the regulation. State v. Shalala, 42 F.3d 595, 598 (10th Cir.1994).
 
 MEMORANDUM
 
 13
 In this appeal, Appellants make two challenges to Indiana's Medicaid system. They argue that OBRA 87 required the states to abolish the level of care distinctions for payment purposes as well as for facility certification and provision of care. They also argue that Indiana's written plan submitted and approved by HCFA should be invalidated because it did not include a description of the criteria by which Indiana determines which patients require skilled nursing care and which require intermediate care.
 
 
 14
 Appellants argue that Indiana's payment system is invalid under OBRA 87. In support of their theory they note that all references to skilled nursing care and intermediate care have been deleted from the Medicaid statutes and regulations. They also cite a portion of legislative history and an HCFA manual as support. They argue that Congress could not have intended to allow payment to be based on distinctions which are no longer allowed for determining the type of care a patient will receive. However, Appellants fail to cite to a provision of the statutes that specifically prohibits payment methods that base reimbursement rates on whether a patient requires skilled nursing care or intermediate care. Significantly, Appellants fail to recognize the broad discretion states have to establish payment and reimbursement systems.
 
 
 15
 A state's duty to pay nursing homes that provide care to Medicaid residents is governed by the Boren Amendment found at section 1396a(a)(13)(A) of Title 42 of the United States Code which provides:
 
 
 16
 (a) A state plan for medical assistance must--
 
 
 17
 (13) provide--(A) for payment ... of the ... nursing facility services ... provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State which, in the case of nursing facilities, take into account the costs, (including the costs of services required to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident) ... which the State finds and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards.
 
 
 18
 In the Boren Amendment Congress changed the manner in which states were required to pay nursing homes receiving Medicaid funding. Previously, payment and reimbursement rates were pursuant to the discretion of the federal government, subject to strict rules of reimbursement. Wilder v. Virginia Hospital Ass'n., 496 U.S. 498, 506, 110 S.Ct. 2510, 2515-16, 110 L.Ed.2d 455 (1990). The Boren Amendment transferred that power to the States. Id. Congress enacted the Boren Amendment in response to inflationary Medicaid costs, believing that giving significant discretion to the states would help to control rising medical costs. Id. Previously, rates were set retroactively based on those charges nursing homes actually paid. After passage of the Boren Amendment states could set rates proactively. Id. at 506-507, n. 7, 110 S.Ct. at 2516 n. 7. Under the Boren Amendment states are required to pay to nursing homes rates which adequately compensate them for the cost of operating an efficient facility in compliance with the standards of care required under the law. The states, however, have wide latitude in developing and implementing alternative reimbursement methodologies. Id. In the words of the Seventh Circuit, "the State must have reasonable freedom to choose its own methodologies." Illinois Health Care Ass'n v. Bradley, 983 F.2d at 1467. Thus, while the amount of the payment is subject to some requirements, the method for arriving at that amount is a matter of significant state discretion.
 
 
 19
 The claim that Indiana's payments to Medicaid funded nursing homes are inadequate under the Boren Amendment given the standards of care under OBRA 87 is not currently within the appellate jurisdiction of this Court.[2] Nor is the claim that Indiana's methods and standards of paying nursing homes are arbitrary and result in inadequate payment. These claims are scheduled for trial in the district court in September. Our review is limited to whether or not Indiana's methods and standards for arriving at a payment amount are in accordance with federal law, regardless of whether the amount actually paid is adequate and reasonable for an efficiently operated nursing home.[3]
 
 
 20
 It is obvious to this Court that the most important policies of OBRA 87 are (1) to improve the level of care for nursing home residents by providing services "to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident", see 42 U.S.C. Sec. 1396r, (2) to ensure that nursing home residents are not disrupted as they once were by being forced to move to a different facility or to be separated from a spouse when they required a different level of care,[4] and (3) to ensure that nursing homes are adequately and reasonably compensated. See 42 U.S.C. Sec. 1396a(a)(13)(A). OBRA 87 legislative history provides, "The Committee has been deeply troubled by persistent reports that despite [the] massive commitment of Federal resources, many nursing homes receiving Medicaid funds are providing poor quality care to elderly and disabled Medicaid beneficiaries." H.Rep. No. 100-391(I) 100th Cong. 1st Sess., at 448 (1987), reprinted in 1987 U.S.C.C.A.N. 2313-1, 2313-268. OBRA 87's first two objectives are already being met by Indiana. The third policy will be addressed by the district court during the September trial.
 
 
 21
 OBRA 87 and its accompanying federal regulations do not contain a provision that prohibits payment methods based on whether a patient requires skilled nursing care or intermediate care. Indiana's system bases its payment rates on the provider's allowable costs plus a potential profit add-on payment. 405 I.A.C. 1-14.1-9. In general, the reimbursement rules provide for a separate determination of the cost involved in providing care for residents in the skilled category and for residents in the intermediate category. See 405 I.A.C. 1-14.1-2(n), --9. The reimbursement includes various limitations designed to protect the state from paying for unnecessary, ineffective or unreasonable costs. One of these limitations is a cap on the amount of staffing costs which will be recognized for reimbursement purposes. Appellees will not pay for more than 5 1/4 hours per patient requiring skilled nursing care per day and 4 hours per patient requiring intermediate care per day.[5] 405 I.A.C. 1-14.1-21. The staffing limits are among several factors used in determining reimbursement rates.
 
 
 22
 This payment method represents Indiana's judgment that patients requiring skilled nursing care require more expensive care and a greater quantity of care than do those requiring intermediate care. Indeed Appellants' own charts support this finding, demonstrating that patients requiring skilled nursing care require on average more care than do patients requiring intermediate care. For example, in 1991/1992 Indiana nursing homes provided an average of 5.43 hours of care for patients requiring skilled nursing care and 4 hours for those requiring intermediate care. In the absence of a statutory provision that prohibits payment methods based on these distinctions, this Court refuses to find Indiana's system illegal. This Court is not in the position to examine the minutia of how much care patients require for certain types of illnesses. Indiana and HFCA in their expertise have determined that the payment method complies with the law. The Court after a careful examination of the record agrees with their determination. Nothing in the record suggests that the payment methods are arbitrary or otherwise not in accordance with the law.
 
 
 23
 This Court now turns its attention to analyzing Appellants' challenges. Appellants attack this payment method alleging that it arbitrarily pays more for patients requiring skilled nursing care whether or not those patients require a greater quantity of care. For example, Appellants assert that a patient requiring total body care, one who cannot perform the activities of daily living, requires a greater amount of care than does a patient who only requires certain skilled nursing care such as intermuscular injections. While this may be true for certain patients, the number of total body care patients may not be large enough to change the fact that, overall, patients requiring skilled nursing care need more care than those requiring intermediate care. Moreover, the claim that nursing homes are not receiving adequate amounts of money from Indiana will be resolved at trial in September.
 
 
 24
 Appellants argue that a portion of the legislative history where, Congress "eliminated the current regulatory and payment distinctions between SNFs and ICFs", suggests that Congress intended to abolish payment distinctions based on level of care distinctions. This quotation merely repeats that payment distinctions may not be made on distinctions between facilities providing different standards of care. It is clear from OBRA 87 that facilities must be certified to provide one level of care and states may no longer have either skilled nursing facilities or intermediate care facilities. Accordingly it makes sense that states may not make payment distinctions based on the now prohibited skilled nursing facilities and intermediate care facilities. Because states may not have different payment rates for skilled nursing facilities and intermediate care facilities, does not suggest states may not make payments to nursing facilities that pay a different amount per resident based on whether that resident requires skilled nursing care or intermediate care. The policies of OBRA 87 are met. All patients receive the single, higher standard of care and patients do not face disruptive moves where their level of care requirements may change. Moreover, this distinction between payment levels based on facility certification distinctions and those based on patient distinctions was recognized by HCFA in responding directly to this challenge as it was by the district court.
 
 
 25
 Appellants also cite to that portion of OBRA 87 which provides that HCFA shall provide assistance upon request to states desiring assistance in setting up case mix systems. See Sec. 4211(j) of OBRA 87; 42 U.S.C. Sec. 1396a note. Appellants argue that prior to OBRA 87, all states had a system that separately certified facilities to provide either skilled nursing care or intermediate care. Thus all states had such payment plans. If Congress believed these methods constituted case mix plans it would not have required HCFA to assist states establish case mix systems. Whether Indiana's plan is a case mix plan is of no significance because OBRA 87 does not require states to establish case mix plans. States possess significant discretion and flexibility in establishing reimbursement plans. If Congress intended for all states to have a case mix system, it could easily have so required. That Congress perhaps believed that case mix systems were helpful or even preferred does not suggest they are mandatory and does not indicate that Congress repealed the broad discretion of states in establishing payment methods and standards. Clearly, HCFA, the agency entrusted with administering the Medicaid funding of nursing homes, does not find Indiana's system based on level of care distinctions to be illegal or problematic.
 
 
 26
 Appellants argue that Congress in its legislative history noted that OBRA 87 raised the standard of care for all nursing home residents especially for residents of formerly intermediate care facilities and that this care would not be free. There is no question that states must reimburse nursing homes in an amount which will allow them to provide these higher standards of care. As stated before, the adequacy of the amount Indiana has paid its nursing homes is not before this Court.
 
 
 27
 None of Appellants' arguments demonstrate that Indiana's nursing home plan which certifies nursing homes to provide care to all Medicaid residents and provides a standard of care to "attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident", but which establishes limits on the amount per resident that will be reimbursed based on whether that resident requires skilled nursing care or intermediate care, is in contravention of federal law. In light of the discretion provided to states to establish their own payment methods, there is no support for finding Indiana's plan illegal.
 
 
 28
 Appellants also challenge the omission from Indiana's Medicaid plan of the criteria for determining whether a patient requires skilled nursing care or intermediate care. A state plan must "specify comprehensively the methods and standards used by the agency to set payment rates." 42 C.F.R. Sec. 447.252(b). "The State Plan must be comprehensive enough so that all parties subject to the reimbursement rate understand which items and services are paid for through the rates." 48 Fed.Reg. 56046, 56049 (1983). Failure to "specify comprehensively" reimbursement methods and standards renders the plan invalid. See e.g. Oklahoma Nursing Home Ass'n. v. Demps, 816 F.Supp. 688, 696-98 (W.D.Okla.1992). HCFA's approval of a Plan that lacks the challenged formula indicates as a matter of law that the challenged formula is not a "method or standard" for setting payment rates that must be included in the plan. Massachusetts Federation of Nursing Homes, Inc. v. Mass., 772 F.Supp. 31, 39 (D.Mass.1991).[6]
 
 
 29
 Indiana's state plan included the details of how reimbursement rates were set including the information that reimbursement for staffing time was limited to 4.75 hours for patients requiring skilled nursing care and 3.75 hours for patients requiring intermediate care. The plan referred to the Indiana Code which contains the criteria for whether a patient is considered to require skilled nursing care or intermediate care. A copy of Indiana's Code was included with its state plan. HCFA approved Indiana's Plan without the level of care criteria. This determination should be accorded considerable weight. Additionally, all the information necessary to understand Indiana's payment rates was included in the plan. The plan contains details of how the level of care criteria will be used to compute rates, but does not include the specifics of which patients will be assigned to which level under the criteria. Appellants have failed to demonstrate that the level of care criteria are payment methods and standards such that their omission requires the invalidation of Indiana's plan. HCFA did not find the omission offensive and neither does this Court.
 
 
 30
 Accordingly, the judgment of the district court granting summary judgment in favor of Defendants/Appellees is
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 The Honorable John C. Shabaz, of the Western District of Wisconsin, is sitting by designation
 
 
 [2]
 The judgment certified by the district court under Rule 54(b) of the Federal Rules of Civil Procedure was limited to Counts VI and IX of the Second Amended Complaint, whereas other counts of the Complaint which were not certified for appeal (Counts II-V, XIII) contain the claim that the limits and criteria are arbitrary and result in inadequate reimbursement. Appellants concede that the issue of arbitrary reimbursement results is not a separate basis for reversal. See Appellants' Corrected Reply Brief at 10, n. 7. The claim that there is no rational connection between a residents' need for skilled nursing care and the number of staff hours needed by the residents was not made in the district court and is thus waived on appeal. Dortch v. O'Leary, 863 F.2d 1337, 1342 (7th Cir.1988) cert. denied, 490 U.S. 1049, 109 S.Ct. 1961, 104 L.Ed.2d 429 (1989). However the issue is meritless for substantive reasons as well. See infra p. 9
 
 
 [3]
 Any claims that Appellees' rates are not in compliance with Indiana state statutes are barred by the Eleventh Amendment
 
 
 [4]
 The district court found this reasoning explained why nursing facilities should no longer have different certifications. See Indiana Assoc. Of Homes for the Aging Et al., IP 93-965-C
 
 
 [5]
 Previously, the limits were 4.75 hours for skilled nursing care and 3.75 hours for intermediate care
 
 
 [6]
 Appellants' citation to Oregon Assoc. of Homes for the Aging, Inc. v. Oregon, 5 F.3d 1239 (9th Cir.1993) is distinguishable from this case. Oregon concerned a state that changed a method and standard that previously was included in a plan