**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-20068

(Summary Calendar)
_____


CHARLES F. PIZZITOLA, JR.,

Plaintiff-Appellant,

versus

RONALD V. CALDARERA d/b/a
Toby's Liquor,
NATIONAL INSURANCE SERVICES, INC.,
As administrator of the Toby's
Liquor Employee Benefit Plan, and
PAN AMERICAN LIFE INSURANCE COMPANY,

Defendants-Appellees.


_____

Appeal from the United States District Court
For the Southern District of Texas
(CA-H-93-3813)
_____

(October 20, 1995)

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Plaintiff Charles F. Pizzitola, Jr. appeals from the district court's adverse rulings on his ERISA claims, brought under 29 U.S.C. § 1140 for intentional interference with his attainment of group medical plan benefits, and under 29 U.S.C. 1132(a)(1)(B) to

_____

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

recover benefits due to him under the plan.  We affirm.

I

For several years, Pizzitola had been an employee of Toby's Liquor, a retail and wholesale liquor store in Houston, Texas, owned by Ronald Caldarera.  Pizzitola delivered cases of liquor, beer and soft drinks, stocked the warehouse and cooler, and generally assisted customers.  As an employee, Pizzitola was a beneficiary of the store's group medical plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

The group medical plan was underwritten by Pan American Life Insurance Company ("PALIC"), and was administered by National Insurance Services, Inc. ("NIS"), a wholly-owned subsidiary of PALIC.  Pizzitola had a $500 deductible under the plan.  As sponsor of the plan, Caldarera was responsible for paying the premiums and would deduct a certain percentage of the cost from Pizzitola's paychecks each month.

In late April of 1993, Pizzitola reported to Caldarera that he had injured his lower back while making a delivery.  On the advice of his doctor, Pizzitola did not return to work the entire next week.  At the end of that week, Pizzitola received a paycheck, which had the usual deduction for insurance under the plan.  On May 10, ten days later, Pizzitola returned to Toby's Liquor to pick up another paycheck even though he had been absent from work a second week.  Caldarera refused to give him another paycheck, and a dispute arose in which Pizzitola's continued employment was

conditioned on his obtaining a doctor's release.  Pizzitola left the store and never returned to work.

About two weeks later, Caldarera telephoned his insurance broker for advice on how to cancel Pizzitola's medical coverage. As instructed, Caldarera wrote "C.F. Pizzitola 5-1-93 No Longer Works Here" on the back of his June statement from NIS.  When NIS received this statement, it retroactively terminated Pizzitola's coverage under the plan, effective May 2, 1993.  On July 19, Pizzitola underwent surgery at Rosewood Hospital, and in August he submitted a claim for reimbursement of medical expenses to NIS. After Walter Zimmerman, vice president of claims for NIS, reviewed the file, NIS denied Pizzitola' claim, concluding that he was no longer eligible for coverage under the group medical plan.

Pizzitola filed suit alleging, *inter alia*, that Caldarera had intentionally interfered with his attainment of plan benefits, in violation of 29 U.S.C. § 1140, and seeking review under 29 U.S.C. § 1132(a)(1)(B) of NIS's determination that Pizzitola was not entitled to benefits under the plan.[1]  At the end of the trial, the district court submitted the ERISA questions to the jury for advisory purposes.  The jury returned a verdict against Pizzitola on all questions submitted.[2]  The district court then entered its

---

[1]     This suit was originally filed in Texas state court, from where NIS had it removed to federal court.  Pizzitola subsequently amended his complaint to include PALIC as a defendant.  The district court entered a Memorandum and Order or Dismissal, denying Pizzitola and Caldarera's motions for partial summary judgment, and granting NIS and PALIC's motions for summary judgment in part, leaving intact Pizzitola's claims under §§ 1132 and 1140.

[2]     The jury also returned an unfavorable verdict on Pizzitola's common law negligence claim against Caldarera.  The plaintiff does not appeal from this verdict.

findings of fact and conclusions of law, and its Final Judgment that Pizzitola take nothing on his claims against all defendants.

## II

Pizzitola contends that, because the evidence to the contrary is overwhelming, the district court erred in concluding that Caldarera did not violate 29 U.S.C. § 1140. Section 1140 makes it "unlawful for any person to *discharge, fine, suspend, expel, discipline, or discriminate* against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled to under the plan . . . ." 29 U.S.C. § 1140 (emphasis added). *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1255 (5th Cir. 1993). At trial, Pizzitola was required to prove that his employer acted with the specific intent to interfere with the attainment of some right to which he had become entitled under the plan. *Id.; McGann v. H. & H. Music Co.*, 946 F.2d 401, 404 (5th Cir. 1991), *cert. denied*, ___U.S.___, 113 S. Ct. 482, 121 L. Ed. 2d 387 (1992).

We review the district court's factual findings to ensure they are not clearly erroneous, and we will affirm them if they are supported by the record. FED. R. CIV. P. 52(a); *Villar v. Crowley Maritime Corp.*, 990 F.2d 1489, 1497 (5th Cir. 1993), *cert. denied*, ___U.S.___, 114 S. Ct. 690, 126 L. Ed. 2d 658 (1994). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

-4-

Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985).

There was evidence presented at trial that Pizzitola stopped working because of his back injury, and that Caldarera would not allow him to continue making deliveries unless he obtained a doctor's release. Pizzitola's education, training, and experience were not shown to have suited him for work other than manual labor. The evidence also supports the finding that Caldarera treated Pizzitola as a terminated employee from at least May 10, 1993 onward, when he refused to pay Pizzitola an additional week's salary for the second week he had not reported to work. Accordingly, we find that the district court was not clearly erroneous to conclude that Caldarera terminated the employment of Pizzitola because of Pizzitola's inability or refusal to continue working for him, and that Caldarera therefore did not have the requisite intent under section 1140 to interfere with Pizzitola's ERISA rights.

On appeal, Pizzitola argues that the evidence demonstrated Caldarera's "callous disregard for plaintiff's rights and well-being." For instance, he correctly points out that Caldarera "could have continued plaintiff's insurance" by paying the premiums, even if he had stopped paying Pizzitola's salary.[3] As

---

[3] The policy provided that the plan sponsor could continue insurance for a period of three months on an employee who ceases active work because of a disability. The district court found that Pizzitola ceased active work with

Pizzitola was aware, however, a participant ceased to be eligible for coverage when he was no longer performing his normal duties on a full-time basis for at least thirty hours a week. In other words, Caldarera had the right to terminate Pizzitola's insurance coverage, and his decision to decline the option of continuing the coverage does not establish that he discharged Pizzitola with an intent to interfere with his ERISA rights.

Pizzitola also argues that the "Application and Subscription Agreement" filled out by Toby's Liquor imposed a duty on the "Applicant-Sponsor" to "notify all employees of any termination or rescission of coverage which affects them." Pizzitola claims that Caldarera's failure to notify him that his insurance was cancelled deprived him of his right to convert his coverage within thirty-one days after the insurance ended. Pizzitola knew by at least May 10, however, that his employment had been terminated and that he was therefore no longer eligible for coverage. Even if we assume that the policy application imposed a legal duty on Caldarera to notify Pizzitola that his coverage had been terminated, we do not believe that Caldarera's failure to do so on or after June 9 establishes that he *discriminated* against or *terminated* Pizzitola on May 10 with the specific intent to interfere with his attainment of any ERISA benefits due under plan. In sum, we hold that the district court was not clearly erroneous in finding that Caldarera did not violate 29 U.S.C. § 1140.

III

---

Caldarera because of a disability within the meaning of the policy.

Pizzitola also contends that the district court erred by concluding that NIS did not abuse its discretion in denying his claim for benefits. We have held that a district court properly reviews a plan administrator's factual determinations for abuse of discretion. *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir.), *cert. denied*, 502 U.S. 973, 112 S. Ct. 453, 116 L. Ed. 2d 470 (1991). In evaluating whether the plan administrator abused in his discretion, the court may consider only the evidence that was available to the plan administrator at the time he made the factual determinations. *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 103 (5th Cir. 1993). Because the district court's determination is a mixed question of law and fact, "we review *de novo* the district court's holding on the question of whether the plan administrator abused its discretion or properly denied a claim for benefits. However, we will set aside the district court's factual findings underlying its review of the plan administrator's determination only if clearly erroneous." *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 600-01 (5th Cir. 1994).

Pizzitola claims that "a prudent and impartial" administrator would have made further investigation if presented with the information available to Zimmerman, the vice president for claims at NIS. "In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir. 1992). As a fiduciary, NIS must provide a "full and fair review" of claim denials. 29 U.S.C. § 1133(2); *Pierre*, 932 F.2d

at 1557.

The record in this case supports a finding that Zimmerman provided a full and fair review of Pizzitola's claim for benefits and did not abuse his discretion in determining that the claim should be denied. At the time of his investigation, Zimmerman had before him the following information: that NIS had been informed that Pizzitola's employment by Toby's Liquor had ended on May 1; that NIS had thereupon ended his medical coverage; that NIS had refunded to Caldarera the May and June premiums attributable to Pizzitola; that no request had been received from Caldarera to continue coverage on Pizzitola as a disabled employee; and that no claims on the policy had been received from Pizzitola that exceeded the $500 deductible when Pizzitola's employment ended, or by June 9, 1993, when NIS received Caldarera's notice. Zimmerman also spoke to the insurance broker who had advised Caldarera on how to terminate Pizzitola's insurance coverage.

Because Pizzitola alleged that he was injured in the scope of his employment, Zimmerman also considered whether the "extended benefits for disability" section of the plan might cover his claim. Under the plan, an employee's coverage was extended for forty-five days if he was "disabled" at the time his insurance ended. Even if Pizzitola was disabled at the time his insurance ended on May 1, his coverage would only have been extended to June 15. As of June 15, Pizzitola had incurred less than the $500 deductible.[4]

---

[4] Pizzitola did not incur more than $500 in medical expenses until July 19.

Pizzitola also asserts that coverage was extended by Caldarera having paid the May and June premiums covering his insurance. Zimmerman did not abuse his discretion in determining that Caldarera had not intended to continue coverage by paying the premiums. NIS was not given notice that Toby's Liquor wanted to continue Pizzitola's coverage. To the contrary, NIS had received Caldarera's notice on the back of the June statement indicating that Pizzitola's coverage should be terminated as of May 1. When the premiums were refunded, Caldarera had not attempted to retender them. Having reviewed the record, we agree with the district court's determination that the plan administrator in this case did not abuse his discretion in denying Pizzitola's claim for benefits.[5]

IV

Pizzitola also contends that the district court erred in denying him reasonable attorney's fees and costs. The court had discretion under 29 U.S.C. § 1132(g)(1)[6] to award attorney's fees, and we review its decision for abuse of discretion. *Izzarelli v. Rexene Products Co.*, 24 F.3d 1506, 1525 (5th Cir. 1994).

The district court's denial of attorney's fees was based on an

---

[5] Pizzitola also claims that defendants had a duty under The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") to keep him informed of his rights. Because this claim is raised for the first time on appeal, we decline to review this argument. *Reich v. Lancaster*, 55 F.3d 1034, 1055-56 (5th Cir. 1995); *EEOC v. Clear Lake Dodge*, 60 F.3d 265, 1151 n.4 (5th Cir. 1994) ("[T]his circuit has a long-standing rule that it will not consider for the first time on appeal an argument not made to the district court.").

[6] Section 1132(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

evaluation of the five-factor test set out in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).[7] Responding to the fourth factor, the court found that the issues litigated in this case did not have broad applicability to other ERISA participants, and there was thus no policy reason for awarding attorney's fees. The court also concluded that the relative merits of the parties' positions weighed in favor of the defendants. We do not believe these findings to be clearly erroneous. *See Ramsey v. Colonial Life Ins. Co. of America*, 12 F.3d 472, 480 (5th Cir. 1994) (affirming a denial of attorney's fees for the prevailing plaintiff where there was little deterrent effect and the suit had no applicability to other ERISA applicants). In light of the record and our holding with regard to Pizzitola's substantive claims, we find that the district court did not abuse its discretion by denying attorney's fees.

V

The judgment of the district court is AFFIRMED.

---

[7]     The court in *Bowen* recommended that a district court consider the following five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) the relative merits of the parties' positions.

624 F.2d at 1266 (footnote omitted).