FILED
United States Court of Appeals
Tenth Circuit

September 10, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TOHEED AHMED,

    Defendant - Appellant.

No. 18-4092
(D.C. No. 2:16-CR-00021-JNP-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **MURPHY**, and **EID**, Circuit Judges.
_____

Defendant-Appellant Toheed Ahmed appeals the district court's denial of his

motion to suppress evidence derived from a dog-sniff of his vehicle. He contends

that the police conducted the dog-sniff after the traffic stop had already terminated,

and that therefore they needed reasonable suspicion to prolong the stop to conduct

the dog-sniff. He argues that the police did not have such reasonable suspicion, and

that the district court therefore should have granted his motion to suppress evidence

stemming from the search.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's denial of Ahmed's suppression motion, finding that the police had reasonable suspicion to prolong the stop to conduct the dog-sniff.

I.

At around 2:35 a.m. on August 26, 2015, a police officer observed Ahmed drive his vehicle along the shoulder of a street before switching lanes and then pulling into the parking lot of a motel that was known as a high crime location. The officer entered the parking lot and stopped his patrol car behind Ahmed's vehicle, initiating the traffic stop. There were two passengers in Ahmed's vehicle—a woman in the front seat and a woman in the back-right seat. When the officer exited his patrol car and walked toward Ahmed's vehicle, the backseat passenger opened the back-right door and began to stand up. The officer told the passenger to remain in the car. But as the officer continued toward the vehicle, the backseat passenger again attempted to exit, this time completely getting out of the car. The officer again instructed her to stay in the car, and she complied.

When the officer arrived at the driver's side door, Ahmed—the driver—was rolling up his window. Ahmed then began talking with the two passengers in the car. He turned his head, looked at the officer through his window, then resumed his conversation with the two passengers. The officer drew his firearm after witnessing Ahmed's behavior.

When Ahmed eventually rolled down his window, the officer observed that both passengers were unbuckled. The officer also observed the backseat passenger dousing herself with cologne.

The officer obtained Ahmed's driver's license and proof of insurance. Ahmed was unable to produce proof of registration because, according to him, he had just purchased the vehicle days prior and had yet to register it. The officer therefore requested a bill of sale in lieu of the registration. While Ahmed looked for his bill of sale, the officer returned to his patrol car and ran a data-check revealing that Ahmed had no outstanding warrants and that the vehicle was unregistered.

The officer returned to Ahmed's vehicle. Upon retrieving the bill of sale, he walked over to the other side of the car and asked the front passenger for her name. The front passenger provided a false name, "Amber Solona," and stated that she had California identification. After running this name through Utah and California databases, the officer was unable to find a person with the name of "Amber Solona" matching the passenger's description. The officer went back to Ahmed's vehicle and placed the front passenger under arrest for providing a false name. He then brought her back to his patrol car to ascertain her real name and subsequently check to see if she had any outstanding warrants. It took the officer roughly 90 minutes to learn the passenger's real identity.

While the officer was speaking with the front passenger in his patrol car, another officer—who had arrived as "back up"—conducted a dog-sniff around Ahmed's vehicle at 2:50 a.m. The dog signaled that narcotics were located inside the

3

vehicle; and upon a subsequent search, the officers found syringes, drug paraphernalia, cocaine, and methamphetamine inside the car.

Ahmed was charged under 21 U.S.C. § 841(a)(1) with possession of narcotics with an intent to distribute. During the lower court proceeding, Ahmed moved to suppress the evidence gathered from the dog-sniff. But the district court denied Ahmed's motion to suppress, finding that the stop was still ongoing during the dog-sniff and that even if the stop had terminated beforehand, the police had reasonable suspicion to prolong the stop for the search. Ahmed eventually pleaded guilty but conditioned his plea on his ability to appeal the admission of the drugs into evidence.

He now appeals, arguing that the dog-sniff was unconstitutional for two reasons. First, he argues that the traffic-stop of Ahmed and his vehicle had terminated before the dog-sniff occurred, requiring the officers to have reasonable suspicion in order to prolong the stop and conduct the search. Second, he contends that because the police lacked reasonable suspicion to prolong the stop, the subsequent search was unconstitutional, and evidence derived therefrom was inadmissible.

## II.

We review de novo a lower court's denial of a motion to suppress. *United States v. Polly*, 630 F.3d 991, 996 (10th Cir. 2011). In doing so, we view the evidence in a light most favorable to the government and accept the district court's findings of fact unless they are clearly erroneous. *Id*.

4

The district court denied Ahmed's motion to suppress the narcotics on two grounds. The first was that the stop had not terminated prior to the dog-sniff. And the second was that, even if the stop had terminated prior to the dog-sniff, the police had reasonable suspicion to prolong the stop for the search. Such reasonable suspicion, the court reasoned, was supported by the following facts: (1) the backseat passenger twice tried to exit the vehicle, (2) the defendant rolled up his window and initially ignored the officer at the beginning of the stop, and (3) the backseat passenger doused herself with cologne. We decline to review the issue of whether the stop had terminated prior to the dog-sniff because we agree with the district court that the police ultimately had reasonable suspicion to prolong the stop.

A.

Police need reasonable suspicion to prolong a traffic-stop to conduct a dog-sniff. *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015). Police have "reasonable suspicion" if they have a "'particularized and objective basis for suspecting' criminal conduct under a totality of the circumstances." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

Factors that are typically "consistent with innocent travel" may contribute to reasonable suspicion depending on the circumstances. *United States v. Valles*, 292 F.3d 678, 680 (10th Cir. 2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 9 (1989)). For example, this court in *United States v. Ludwig* found that an officer had reasonable suspicion to conduct a dog-sniff of a vehicle partially because he noticed an "overpowering smell of cologne when [the driver] rolled down his window." 641

5

F.3d 1243, 1248 (10th Cir. 2011). While acknowledging that the use of cologne was "consistent with lawful activity," we also noted that it is "commonly used to mask the odor of drugs." *Id*. (quoting *United States v. Ortiz-Ortiz*, 57 F.3d 892, 895 (10th Cir. 1995)) (quotations omitted). We have similarly found that a driver's odd use of his window can contribute to reasonable suspicion. *See United States v. Ludlow*, 992 F.2d 260, 264 (10th Cir. 1993). In affirming the lower court's denial of a suppression motion in *Ludlow*, this court accepted the lower court's conclusion that the defendant's failure to "roll [his] window all the way down . . . raise[d] suspicion that there was an odor in the car that the driver did not want out." *Id*.

Defiant behavior and presence in a high-crime area can also contribute to an officer's reasonable suspicion. In *United States v. McHugh*, we found reasonable suspicion to exist partially because the defendant did "not obey[] the armed security guard's commands, and . . . tr[ied] to exit the vehicle despite the guard's orders to the contrary." 639 F.3d 1250, 1257 (10th Cir. 2011). A defendant's presence in a high-crime area can separately contribute to reasonable suspicion. *United States v. McGehee*, 672 F.3d 860, 868 (10th Cir. 2012) (noting the fact that the officer "encountered the vehicle . . . in front of a residence known to be associated with drug-trafficking . . . supported [the officer's] belief that the occupants were engaged in criminal conduct"); *United States v. Clarkson*, 551 F.3d 1196, 1201 (10th Cir. 2009); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that the location of a traffic-stop in a "high crime area" is one of the "relevant contextual considerations" when assessing reasonable suspicion).

B.

Several factors here gave the officer reasonable suspicion to prolong the stop of Ahmed's vehicle and conduct the dog-sniff. First, the backseat passenger doused herself with cologne as the driver rolled down his window. As we found in *Ludwig*, an occupant's use of cologne as a potential masking agent can contribute to reasonable suspicion. 641 F.3d at 1248. Second, Ahmed's initial delay in rolling down the window was suspicious for several reasons. Not only could it have been an attempt to prevent odor from escaping the car, *see Ludlow*, 992 F.2d at 263, but it also could have appeared as defiant behavior. The backseat passenger similarly exhibited defiance when she repeatedly tried to exit the car contrary to the officer's orders. As this court in *McHugh* found, such defiant behavior can give rise to reasonable suspicion. 639 F.3d at 1257. Separately, the fact that the traffic-stop occurred in front of a motel known as a high crime location further contributed to the officer's reasonable suspicion. *See McGehee*, 672 F.3d at 868; *Wardlow*, 528 U.S. at 124.

The above factors, together under the totality of the circumstances, provided a "particularized and objective basis" for the officer to suspect criminal activity, and thus satisfied the reasonable suspicion standard. It is on this ground that we affirm the district court's denial of Ahmed's suppression motion. And because we affirm on the ground that reasonable suspicion supported the search, we need not consider whether the stop had terminated prior to the dog-sniff. *See United States v. Damato*, 672 F.3d 832, 844 (10th Cir. 2012).

7

III.

For the reasons stated above, we AFFIRM the district court's denial of Ahmed's motion to suppress.

Entered for the Court


Allison H. Eid
Circuit Judge